UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| LESLEY ESCHINGER, Individually, and on behalf of others similarly situated, Plaintiff, | ) | Case No. |
| v. | ) | CLASS ACTION |
| VOLKSWAGEN GROUP OF AMERICA, INC., A New Jersey Corporation, Defendant. | ) | **CLASS ACTION COMPLAINT** **JURY TRIAL DEMANDED** |

Plaintiff, LESLEY ESCHINGER ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class"), allege the following:

## I. FACTUAL ALLEGATIONS

1. The United States Government, through the Environmental Protection Agency, has passed and enforced laws designed to protect United States citizens from pollution and in particular, certain chemicals and agents known to cause disease in humans. Automobile manufacturers must abide by these US laws and must adhere to EPA rules and regulations. Defendant Volkswagen Group of America ("Volkswagen") purposefully and intentionally breached the laws of the United States and the rules and regulations of the EPA by selling in the United States vehicles manufactured by its affiliates Volkswagen AG and Audi AG that purposefully evaded federal and state laws. As stated by Cynthia Giles, Assistant Administrator for the Office of Enforcement and Compliance Assurance at the EPA: "Using a defeat device in

cars to evade clean air standards is illegal and a threat to public health." Yet that is exactly what Volkswagen did in its 2009-2015 Volkswagen and Audi diesel vehicles.[1]

2. As detailed in the EPA's Notice of Violation ("NOV"), sophisticated software in the Volkswagen and Audi diesel vehicles sold by Defendant Volkswagen in the United States detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test. But otherwise, that is at all other times that the vehicle is running, the emissions controls are suppressed. This results in cars that meet emissions standards in the laboratory or state testing station, but during normal operation emit nitrogen oxides (NOx) at up to 40 times the standard allowed under United States laws and regulations. The software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

3. NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory illness are at acute risk of health effects from these pollutants.

4. The Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution. Every vehicle sold in the United States must be covered by an EPA issued certificate of conformity. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of the emissions control system

[1] *See* Sept. 18, 2015 EPA News Release.

during normal driving conditions, cannot be certified. By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions that were certified to EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal law.

5. According to the EPA NOV, Volkswagen installed its "defeat device" in at least the following diesel models of its vehicles (the "Affected Vehicles"): MY 2009-2015 VW Jetta; MY 2009-2014 Jetta Sportwagen; MY 2012-2015 VW Beetle; MY 2012-2015 VW Beetle Convertible; MY 2010-2015 VW Golf; MY 2015 Golf Sportwagen; MY 2012-2015 VW Passat; and MY 2010-2015 Audi A3. Discovery may reveal that additional vehicle models and model years are properly included as Affected Vehicles.

6. Volkswagen expressly marketed and advertised its CleanDiesel models as extraordinarily clean, EPA certified in all 50 states, and powerful. For example, the following promotional material was used in 2010, and similar materials have been used across the spectrum of models using the CleanDiesel engine system.[2]

7. Volkswagen has charged a substantial premium for the Affected Vehicles, ironically marketed by Volkswagen as "CleanDiesel." For example, for the 2015 Volkswagen Jetta, the base S model has a starting MSRP of $18,780. The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, a price premium of $2,860. The CleanDiesel premium for the highest trim Jetta model is substantially higher. The highest level gas Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a staggering $6,315 premium.

---

[2] *See* Burn rubber, not money article.

8. These premiums occur across all of the vehicles in which Volkswagen installed its "defeat device" for emissions testing. The table below sets forth the price premium for each base, mid-level and top-line trim for each affected model:

**CleanDiesel Price Premiums**

| **Model** | **Base** | **Mid-level** | **Top-line** |
|---|---|---|---|
| *VW Jetta* | $2,860 | $4,300 | $6,315 |
| *VW Beetle* | $4,635 | n/a | $2,640 |
| *VW Golf* | $2,950 | $1,000 | $1,000 |
| *VW Passat* | $5,755 | $4,750 | $6,855 |
| *Audi A3* | $2,805 | $3,095 | $2,925 |

9. Volkswagen has been ordered by the EPA to recall the Affected Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation. However, Volkswagen will not be able to make the Affected Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency. As a result, even if Volkswagen is able to make Class members' Affected Vehicles EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised. This will necessarily result in a diminution in value of every Affected Vehicle and it will cause owners of Affected Vehicles to pay more for fuel while using their Affected Vehicles.

10. On September 20, 2015, Volkswagen admitted that the EPA allegations were true. It admitted using a "defeat device" in the Affected Vehicles. Its CEO Martin Winterkorn stated: "I personally am deeply sorry that we have broken the trust of our customers and the public."

11. As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Affected Vehicles emit 40 times the allowed levels, owners and/or lessees of the Affected Vehicles have suffered losses in money and/or property. Had Plaintiff and Class members known of the "defeat device" at the time they purchased or leased their Affected Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did. Moreover, when and if Volkswagen recalls the Affected Vehicles and degrades the CleanDiesel engine performance in order to make the Affected Vehicles compliant with EPA standards, Plaintiff and Class members will be required to spend additional sums on fuel and will not obtain the performance characteristics of their vehicles when purchased. Moreover, Affected Vehicles will necessarily be worth less in the marketplace because of their decrease in performance and efficiency.

12. Plaintiffs bring this action for actual damages, equitable relief, including restitution, injunctive relief, and disgorgement of profits, and all other relief available on behalf of themselves and all similarly-situated individuals and entities (the "Class" or "Class Members") who own or lease or who have owned or leased a 2009-2015 Volkswagen or Audi diesel-powered vehicle which contained software specifically designed to avoid and cheat EPA test standards.

## II. JURISDICTION

13. This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists.

This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III. VENUE

14. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Moreover, Volkswagen is headquartered in this District and has marketed, advertised, sold, and leased the Affected Vehicles within this District.

## IV. PARTIES

### A. Plaintiff

15. Lesley Eschinger is a resident of the State of Maryland. In 2012, Ms. Eschinger purchased a new 2013 Volkswagen Jetta SportWagen TDI from an authorized Volkswagen dealer in Alexandria, Virginia. Plaintiff purchased and still owns this vehicle. Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emission control "defeat device" which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit 40 times the allowed level of pollutants, including NOx. The use of the "defeat device" by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of her vehicle. Volkswagen knew about and purposefully used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiff, so Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that her vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

### B. Defendant

16. Volkswagen Group of America, Inc., is a corporation doing business in all 50 states (including the District of Columbia) and is organized under the laws of the State of New Jersey, with its principal place of business located at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. At all times relevant to this action, Volkswagen manufactured, distributed, sold, leased, and warranted the Affected Vehicles under the Volkswagen and Audi brand names throughout the United States. Volkswagen and/or its agents designed, manufactured, and installed the CleanDiesel engine systems in the Affected Vehicles, which included the "defeat device." Volkswagen also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Affected Vehicles.

## V. TOLLING OF THE STATUTE OF LIMITATIONS

### A. Discovery Rule Tolling

17. Class Members had no way of knowing about Volkswagen's deception with respect to its CleanDiesel engine system and "defeat device." It took federal EPA and California Air Resources Board investigations to uncover Volkswagen's deception, which involved sophisticated software manipulation on Volkswagen's part. As reported by the *Los Angeles Times* on September 18, 2015, it took California Air Resources Board testing on a special dynamometer in a laboratory, open road testing using portable equipment, and the use of special testing devised by the Board to uncover Volkswagen's scheme and to detect how software on the engine's electronic control module was deceiving emissions certifications tests. Plainly, Volkswagen was intent on expressly hiding its behavior from regulators and consumers. This is the quintessential case for tolling.

18. Within the time period of any applicable statutes of limitations, Plaintiff and members of the proposed classes could not have discovered through the exercise of reasonable

diligence that Volkswagen was concealing the conduct complained of herein and misrepresenting the Company's true position with respect to the emission qualities of its vehicles.

19. Plaintiff and the other Class Members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Volkswagen did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Volkswagen had information in its possession about the existence of its sophisticated emissions scheme and that it opted to conceal that information, which was discovered by Plaintiff only shortly before this action was filed. Nor in any event would such an investigation on the part of Plaintiff and other Class members have disclosed that Volkswagen valued profits over compliance with federal and state law, or the trust that Plaintiff and other Class members had placed in its representations, or that, necessarily, Volkswagen actively discouraged its personnel from raising or disclosing issues with regard to the true quality and quantity of the emissions, and the emissions software, of its vehicles, or of Volkswagen's emissions scheme.

20. For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to all vehicles identified herein.

**B. Fraudulent Concealment Tolling**

21. All applicable statutes of limitation have also been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

22. Instead of disclosing its emissions scheme, or that the quality and quantity of emissions from the subject vehicles were far worse than represented, and of its disregard of federal and state law, Volkswagen falsely represented that its vehicles complied with federal and

state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

**C. Estoppel**

23. Volkswagen was under a continuous duty to disclose to Plaintiff and the other Class members the true character, quality, and nature of emissions from the vehicles at issue, and of those vehicles' emissions systems, and of the compliance of those systems with applicable federal and state law.

24. Volkswagen knowingly, affirmatively, and actively concealed the true nature, quality, and character of the emissions systems, and the emissions, of the vehicles at issue.

25. Volkswagen was also under a continuous duty to disclose to Plaintiff and Class members that it had engaged in the scheme complained of herein to evade federal and state emissions and clean air standards, and that is systematically devalued compliance with, and deliberately flouted, federal and state law regulating vehicle emissions and clean. Air.

26. Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

## VI. CLASS ALLEGATIONS

27. Plaintiff brings this action on behalf of herself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class and subclasses (collectively, the "Classes"):

**The Nationwide Class**

> All persons or entities in the United States who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2014 VW Jetta Sportwagen; MY 2012-2015 VW Beetle; MY 2012-2015 VW Beetle Convertible; MY 2010-2015 VW Golf; MY 2015 VW Golf Sportwagen; MY 2012-2015 VW Passat; and MY 2010-2015 Audi A3.

**The Maryland Subclass**

All persons or entities in the state of Maryland who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2014 VW Jetta Sportwagen; MY 2012-2015 VW Beetle; MY 2012-2015 VW Beetle Convertible; MY 2010-2015 VW Golf; MY 2015 VW Golf Sportwagen; MY 2012-2015 VW Passat; and MY 2010-2015 Audi A3.

28. Excluded from the Class are individuals who have personal injury claims resulting from the "defeat device" in the CleanDiesel system. Also excluded from the Class are Volkswagen and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiff reserves the right to revise the Class definition based upon information learned through discovery.

29. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

30. This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

31. Numerosity: Federal Rule of Civil Procedure 23(a)(1): The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are not less than hundreds of thousands of members of the Class, the precise number of Class members is unknown to Plaintiff, but may be ascertained from Volkswagen's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notices.

32. Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a) Whether Volkswagen engaged in the conduct alleged herein;

b) Whether Volkswagen designed, advertised, marketed, distributed, leased, sold or otherwise placed Affected Vehicles into the stream of commerce in the United States;

c) Whether the CleanDiesel engine system in the Affected Vehicles contains a defect in that it does not comply with U.S. EPA requirements;

d) Whether the CleanDiesel engine systems in Affected Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Affected Vehicles;

e) Whether Volkswagen knew about the "defeat device" and, if so, how long Volkswagen has known;

f) Whether Volkswagen designed, manufactured, marketed, and distributed Affected Vehicles with a "defeat device";

g) Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

h) Whether Plaintiff and the other Class members overpaid for their Affected Vehicles;

i) Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

j) Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what manner.

33. Typicality: Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

34. Adequacy: Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate Class representatives because her interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and her counsel.

35. Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2): Volkswagen has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

36. Superiority: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for the members of the

Classes to individually seek redress for Volkswagen's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII. VIOLATIONS ALLEGED

### A. Claims Brought on Behalf of the Nationwide Class and the Maryland Subclass Under Maryland Law

**COUNT I**
**VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT**
**(MD. CODE COM. LAW § 13-101, *et seq.*)**

37. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

38. This claim is brought on behalf of Nationwide Class members who are Maryland residents.

39. Volkswagen, Plaintiff, and the Maryland Class are "persons" within the meaning of MD. CODE COM. LAW § 13-101(h).

40. The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good. MD. COM. LAW CODE § 13-303. Volkswagen participated in misleading, false, or deceptive acts that violated the Maryland CPA. By systematically devaluing safety and concealing a plethora of defects in VW-branded vehicles, Volkswagen engaged in deceptive business practices prohibited by the Maryland CPA.

41. Volkswagen engaged in unlawful trade practices, including:

(1) representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have;

(2) representing that the Affected Vehicles are of a particular standard and quality when they are not;

(3) advertising the Affected Vehicles with the intent not to sell them as advertised; and

(4) otherwise engaging in conduct that is unfair or deceptive and likely to deceive.

42. Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

43. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed that the CleanDiesel Engine System was non-EPA compliant, and the use of the "defeat device" in Affected Vehicles as described above. Accordingly, Volkswagen engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in R.I. GEN. LAWS § 6-13.1, et seq., including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

44. As a direct and proximate result of Volkswagen's violations of the Maryland CPA, Plaintiff and the Maryland Class have suffered actual damage.

45. Plaintiff and the other Class members were injured as a result of Volkswagen's conduct in that Plaintiff and the other Class members overpaid for their Affected Vehicles and

did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

**COUNT II**
**FRAUD BY CONCEALMENT**

46. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

47. Plaintiff brings this Count on behalf of Nationwide Class members who are Maryland residents (the "Maryland Class").

48. Volkswagen intentionally concealed that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device," or acted with reckless disregard for the truth, and denied Plaintiff and the other Class members' information that is highly relevant to their purchasing decision.

49. Volkswagen further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling were new, had no significant defects, complied with EPA regulations and would perform and operate properly when driven in normal usage.

50. Volkswagen knew these representations were false when made.

51. The Affected Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, non-EPA-compliant, unsafe, and unreliable because the Affected Vehicles contained faulty and defective CleanDiesel engine system, as alleged herein.

52. Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant and unreliable in that certain crucial emissions functions of the Affected Vehicles would be rendered inoperative due to the "defeat device" installed in the

defective CleanDiesel engine system, because Plaintiff and the other Class members relied on Volkswagen's material representations that the Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

53. The aforementioned concealment was material because if it had been disclosed Plaintiff and the other Class members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Affected Vehicles at the prices they paid.

54. The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements.

55. Plaintiff and the other Class members relied on Volkswagen's reputation – along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Volkswagen's Affected Vehicles.

56. As a result of their reliance, Plaintiff and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

57. Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members. Plaintiff and the other Class members are therefore entitled to an award of punitive damages.

**UNJUST ENRICHMENT**
**(UNDER MARYLAND LAW)**

58. Plaintiff realleges and incorporates by reference all above paragraphs as though fully set forth herein.

59. This claim is brought only on behalf of the Maryland Class.

60. Volkswagen has received and retained a benefit from Plaintiff and the Class, resulting in inequity.

61. Volkswagen has benefitted from selling and leasing vehicles whose value was artificially inflated by Volkswagen's concealment of the vehicles' performance and emissions problems for far more than they were worth, at a profit. Plaintiffs and members of the Class have overpaid for these vehicles.

62. Volkswagen has further benefitted by avoiding the costs of a recall and other lawsuits, and has benefitted from its statements about the success of Volkswagen diesel vehicles.

63. Thus, all Maryland Unjust Enrichment Class Members have conferred a benefit on Volkswagen.

64. It is inequitable for Volkswagen to retain these benefits.

65. Plaintiff was not aware of the true facts of Volkswagen-branded diesel vehicles and did not benefit from Volkswagen's conduct.

66. Volkswagen knowingly accepted the benefits of its unjust conduct.

67. As a result of Volkswagen's conduct, the amount of its unjust enrichment should be disgorged, in an amount to be determined at trial.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of members of the Nationwide Class and State Subclasses, respectfully request that the Court enter judgment in their favor and against Volkswagen, as follows:

A. Certification of the proposed Nationwide Class and State Subclasses, including appointment of Plaintiff's counsel as Class Counsel;

B. An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C. Injunctive relief in the form of a recall or free replacement program;

D. Costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

E. An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

F. An award of costs and attorneys' fees; and

G. Such other or further relief as may be appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial for all claims so triable.

DATED: September 24, 2015

MOTLEY RICE LLC

By __________/s/________________________
*(signed by William F. Askinazi with permission of Joseph F. Rice)*

Joseph F. Rice (SC Bar #4710)
Jodi Westbrook Flowers (SC Bar #66300)
Kevin R. Dean (SC Bar #70347)
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450

jrice@motleyrice.com
jflowers@motleyrice.com
kdean@motleyrice.com

By ___________/s/_________________________

William F. Askinazi
**ASKINAZI LAW & BUSINESS LLC**
12504 Palatine Court
Potomac, MD 20854
Telephone: (301) 540-5380
Facsimile: (240) 715-9113
askinazilaw@gmail.com

*Attorneys for Plaintiff and the proposed class and subclasses*